1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10    EATHER L. THOMAS,

11             Plaintiff,                    No. CIV S-06-1759 GGH

12        vs.

13    MICHAEL J. ASTRUE,                     ORDER
      Commissioner of Social Security,[1]
14
               Defendant.
15    _____/

16             Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17    Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

18    ("DIB") under Title II of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

19    motion for summary judgment is granted, and the Commissioner's motion for summary

20    judgment is denied.  This matter is remanded pursuant to sentence six of 42 U.S.C. § 405(g), for

21    consideration of the new evidence presented to the Appeals Council and for further development

22    of  the record.

23    \\\\\

24    _____

25        [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
      Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
26    § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
      action.

BACKGROUND

Plaintiff, born May 18, 1954, applied for disability benefits on January 13, 2004. (Administrative Transcript ("Tr.") at 66-68.) Plaintiff alleged she was unable to work since April 4, 2002, due to impairments in her hands, right elbow, shoulder and back. (Tr. at 77.) In a decision dated February 1, 2006, administrative law judge ("ALJ") Richard D. Wurdeman determined that plaintiff was not disabled.[2] The ALJ made the following findings:

> 1. Claimant meets the disability insured status requirements of the Act through December 2006.
>
> 2. Claimant attempted to work September – October 2003. This may be considered an unsuccessful work attempt.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3.       Claimant has severe impairments affecting her neck and hands status post cervical surgery and carpal tunnel and cubital tunnel release on the right wrist; she also has left carpal tunnel syndrome symptoms.  Claimant also has related situational depression, which has been considered in combination with her severe impairment(s) without regard for its severity if considered separately.  20 C.F.R. § 404.1523.

4.       Claimant's impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5.       Claimant retains the residual functional capacity to perform modified light work with the following limitations: no walking or standing greater than four hours per day.  No tight grasping and no overhead work with the right dominant hand.  Claimant is precluded from repetitive movement of the head or neck.  She is precluded from keyboarding more than two hours per day or keyboarding more than ten minutes continuously.

6.       Claimant's testimony and that of her daughter is credible in so far as consistent with my findings herein.

7.       Claimant is able to perform past relevant work as a customer relations complaint clerk based on vocational expert testimony.

8.       Claimant was not under a "disability," as defined in the Act, at any time through the date of this decision.

(Tr. at 22-23.)

ISSUES PRESENTED

Plaintiff has raised the following issues: whether new evidence presented to the Appeals Council supports plaintiff's contention of pain and functional loss in her left hand and warrants remand;  whether the ALJ properly evaluated plaintiff's subjective symptoms; whether the ALJ gave proper weight to the opinions of plaintiff's treating physicians; whether the ALJ properly evaluated the testimony of plaintiff's daughter; whether the hypothetical question presented to the vocational expert was sufficient; and, whether the ALJ properly considered the side effects of plaintiff's medications.  The court addresses these issues below, although not necessarily in that order.

1   LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is

3   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4   the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

6   Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

7   accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

8   1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

9   (1938)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

10  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

11  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

14  ANALYSIS

15      A.  The New Evidence Submitted to the Appeals Council Warrants Remand

16          Plaintiff argues that new evidence submitted to the Appeals Council was not

17  properly evaluated, and that the Appeals Council should have remanded the case to the ALJ for

18  consideration of the additional evidence.  The Appeals Council denied plaintiff's request for

19  review on June 7, 2006, and wrote that it had considered the newly admitted evidence, but found

20  it did not provide a basis for changing the ALJ's decision.  (Tr. at 6-9.)

21          Federal courts may undertake review of administrative adjudicatory decisions

22  made by the Department of Health and Human Services, but only if the decision is considered the

23  final decision of the Commissioner.  42 U.S.C. § 405(g).  The Commissioner has issued

24  regulations which define when final decisions have been made.  See, 20 C.F.R. § 404.955

25  (defining when the decision of the ALJ is the final decision of the Commissioner, as well as the

26  function of the Appeals Council.  20 C.F.R. § 404.967 et seq.).  Decisions of the Appeals

4

1   Council refusing to review an ALJ's decision on the merits because the issues raised do not meet

2   the requirement for review on the merits are not final decisions; in such cases the ALJ's decision

3   is the final decision of the Secretary.  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994);

4   Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992); Russell v. Brown, 856 F.2d 81, 83-84

5   (9th Cir. 1988).  Only if the Appeals Council grants review, and then issues a decision on the

6   merits does the Appeals Council's decision become the final decision of the Commissioner.

7   Russell, 856 F.2d at 83-84; Browning, 958 F.2d at 822.  Thus, this court has no jurisdiction to

8   adjudicate the propriety of the manner in which the Appeals Council decided to deny review in

9   this case – be that review complete or incomplete, thoughtful or inconsiderate, correct or

10  incorrect.  Accordingly, the court does not address plaintiff's contention that the Appeals Council

11  failed to articulate sufficiently specific reasoning to support its assessment of the new medical

12  evidence.

13          However, somewhat paradoxically, the evidence presented to the Appeals Council

14  is part of the record for purposes of this court's review.  Ramirez v. Shalala, 8 F.3d 1449, 1452

15  (9th Cir. 1993); accord, O'Dell v. Shalala, 44 F.3d at 859 (10th Cir. 1994); Keeton v. Dept. of

16  Health & Human Services, 21 F.3d 1064, 1067 (11th Cir. 1994); Riley v. Shalala, 18 F.3d 619,

17  622 (8th Cir.1994); Wilkins v. Dept. of Health and Human Services, 953 F.2d 93, 96 (4th Cir.

18  1991).  Thus, in determining whether substantial evidence supports the Commissioner's decision

19  that plaintiff is not disabled, the court considers the evidence presented to the ALJ as well as the

20  new evidence submitted to the Appeals Council.  Here, specifically, that evidence includes

21  treatment records from plaintiff's treating orthopedic surgeon, Dr. Michael S. Peterson, M.D., as

22  well as treatment records from plaintiff's other treating physicians, including Dr. Kraig

23  Katzenmeyer.  Most of these records are dated after the September 13, 2005, hearing but prior to

24  the ALJ's February 1, 2006, decision (Tr. at 535-78), although some are dated prior to the

25  hearing, and therefore well before the ALJ's decision.  (Tr. at 547-48, 555-56, 560.)  In any

26  event, the evidence keyed on by the plaintiff are those treatment notes related to plaintiff's carpal

1  tunnel syndrome in both her left and right hands.  In particular, plaintiff points to reports

2  concerning her surgery for carpal tunnel syndrome on her left hand on January 17, 2006.  (Tr. at

3  539-44.)

4          Good cause exists for the absence of these treatment records from the record

5  presented to the ALJ.  Plaintiff explains that neither her counsel nor the ALJ were aware that

6  plaintiff underwent surgery in January 2006.  See Plaintiff's Brief, at 5:2-3.  The evidence itself,

7  which indicates a worsening of symptoms in plaintiff's left hand, as well as failed treatment of

8  carpal tunnel and de Quervain's syndromes in her right hand, is material.  The Ninth Circuit has

9  determined that a court need only find a reasonable possibility that the new evidence would have

10 changed the outcome of the case.  Booz v. Secretary of Health and Human Services, 734 F.2d

11 1378, 1380-1381 (9th Cir. 1984).

12         Here there exists such reasonable possibility.  As discussed below, the ALJ

13 accorded less weight to the opinion of Dr. Peterson, because at the time of the hearing, he had

14 only examined plaintiff on one occasion.  (Tr. at 20.)  In that June 6, 2005, opinion Dr. Peterson

15 wrote that plaintiff should not lift, push or pull over two pounds, and was restricted from

16 repeated bending and twisting of her neck.  (Tr. at 476.)  His opinion also reflects some internal

17 inconsistency, as he opines that plaintiff should be restricted to performing data entry for only

18 one hour per day (Tr. at 474), but writes on an attached form that plaintiff should be restricted

19 only to one hour per four hour shift.  (Tr. at 476.)  Thus, it is unclear whether Dr. Peterson meant

20 to limit plaintiff to one or two hours of keyboarding per day.

21         The ALJ's ultimate assessment of plaintiff's residual functional capacity ("RFC")

22 limited plaintiff to keyboarding for no more than ten minutes at one time for a total of two hours

23 per day.  The RFC assessment did not, however, include Dr. Peterson's restrictions as to lifting,

24 pushing, pulling, and precluded only "repetitive movement of the head or neck."  (Tr. at 20.)  In

25 any event, although Dr. Peterson was a "one time evaluator" when he rendered the June 6, 2005,

26 opinion, he subsequently saw plaintiff a number of times in connection with carpal tunnel

1    syndrome in both hands and de Quervain's syndrome in her right.[3]  On October 24, 2005, Dr.

2    Peterson found that a nerve study showed mild carpal tunnel syndrome on her left side, which he

3    treated with a Celestone and lidocaine injection.  (Tr. at 545.)  On December 5, 2005, plaintiff

4    reported that the injection gave her only a few days of relief, and that she was experiencing pain,

5    numbness, and tingling in both hands.  Dr. Peterson injected her "de Quervain's and right carpal

6    tunnel," and discussed proceeding with surgery on her left hand.  (Tr. at 544.)  On January 9,

7    2006, plaintiff reported that the injection on the right hand did not substantially improve her

8    symptoms, and discussed the pending surgery on her left hand.  (Tr. at 542.)  On January 17,

9    2006, Dr. Peterson performed a left carpal tunnel release on plaintiff's left hand (Tr. at 540-41),

10   and on January 24, 2006, plaintiff reported to Dr. Peterson's physician's assistant that she had

11   only mild pain in her left hand following the surgery, but that the pain had returned to her right

12   hand despite the previous injection.  (Tr. at 539.)  There are no records beyond this point

13   showing whether or not plaintiff's left carpal tunnel release continued to relieve her symptoms,

14   or whether those symptoms returned, as they did following similar surgery on plaintiff's right

15   hand in March 2003.  (Tr. at 346.)  Thus, there are outstanding issues with regard to the duration

16   of plaintiff's left hand condition and related symptoms, as well as the failed treatment of her right

17   hand.  In light of Dr. Peterson's treatment of plaintiff's left and right hands subsequent to June 6,

18   2005, it is reasonable to conclude that his assessment as to her physical limitations might differ

19   from his initial, one time assessment, which is itself internally contradictory.  It is also reasonable

20   to infer that, in light of this evidence showing greater severity of carpal tunnel syndrome in

21   plaintiff's left hand, that the ALJ may have assessed additional restrictions on plaintiff's ability

22   to perform work related activities with her left hand.  On remand, the ALJ may determine that the

23   new evidence warrants obtaining additional medical evidence or testimony, including by plaintiff

24

25         [3]  De Quervain's syndrome is "stenosing tenosynovitis of the short extensor," and usually
26   occurs after repetitive use of the wrist.  The Merck Manual 336 (18th ed. 2006).  "The major
     symptom is aching pain at the wrist and thumb, aggravated by motion."  Id.

7

1    regarding her post-operative symptoms and limitations, as well as the testimony of a vocational

2    expert regarding plaintiff's ability to perform her past relevant work or other jobs in the national

3    economy.

4           B.  Treating Physicians' Opinions

5                  Plaintiff contends that the ALJ erred in according less weight to the opinions of

6    plaintiff's treating orthopedic surgeon, Dr. Michael S. Peterson, M.D., and her primary care

7    physician, Alan S. Werblin, M.D., and by relying instead on the opinion of treating physician, Dr.

8    Kraig Katzenmeyer, M.D.

9                  The weight given to medical opinions depends, in part, on whether they are

10   proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

11   F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[4]  Ordinarily,

12   more weight is given to the opinion of a treating professional, who has a greater opportunity to

13   know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

14   Cir. 1996).

15                  To evaluate whether an ALJ properly rejected a medical opinion, in addition to

16   considering its source, the court considers whether (1) contradictory opinions are in the record;

17   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

18   treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81

19   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

20   rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

21   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

22

23          [4] The regulations differentiate between opinions from "acceptable medical sources" and
24   "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
     psychologists are considered "acceptable medical sources," and social workers are considered
25   "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
     when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
26   regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
     accordingly are given less weight than opinions from "acceptable medical sources."

examining professional's opinion (supported by different independent clinical findings), the ALJ

may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and

supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

(treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

881 F.2d at 751.

Here, the ALJ accorded the most weight to the opinion of Dr. Katzenmeyer, the

occupational medicine physician who saw plaintiff regularly over a more than three-year period

in connection with her worker's compensation claim.  The ALJ noted that the record contained a

"long series of residual functional capacity statements" by Dr. Katzenmeyer, which indicated "an

ability to work so long as keyboarding is restricted."  (Tr. at 20.)  The ALJ accorded these

opinions more weight because Dr. Katzenmeyer was plaintiff's "long term treating physician and

[had] more extensive experience with [plaintiff] and [was therefore] better able to assess her

condition."  (Tr. at 20, 21.)  In particular, the ALJ relied on a work status report completed by Dr.

Katzenmeyer on October 29, 2003, in which he opined that plaintiff was "permanent and

stationary" and was returned to modified duty with the following preclusions: no repetitive

bending/twisting of the neck, and no data entry over one hour per four hour period.  (Tr. at 17,

348.)

In contrast to Dr. Katzenmeyer's opinion, plaintiff's primary care physician, Dr.

Werblin, opined on July 19, 2004, that plaintiff could lift and carry ten pounds frequently, could

only stand or walk for a total of four hours in an eight hour workday for forty minutes at a time,

---

[5]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1  and could sit for no more than four hours, for fifteen minutes at a time without interruption.  (Tr.

2  at 433-36.)  Dr. Werblin further opined that plaintiff was precluded from repetitive reaching,

3  handling and fingering, and could not use her fingers or arms at all due to cervical radiculopathy.

4  (Tr. at 435.)

5           Although the ALJ's RFC assessment reflects Dr. Werblin's opinion insofar as it

6  limits plaintiff to walking or standing for no more than four hours per day, and precludes her

7  from tight grasping and overhead work with the right dominant hand (Tr. at 20), the ALJ

8  accorded little weight to Dr. Werblin's opinion because it indicated that plaintiff's symptoms and

9  limitations were present since 1977.  The ALJ reasoned that Dr. Werblin's opinion covered long

10 periods during which plaintiff had been gainfully employed, and that there was no objective

11 evidence to support Dr. Werblin's opinion in this regard.  (Tr. at 18, 436.)  As discussed above,

12 the ALJ likewise accorded less weight to the opinion of Dr. Peterson, plaintiff's treating

13 orthopedic surgeon, because he was a "one time evaluator."  (Tr. at 20.)

14          The ALJ's reliance on Dr. Katzenmeyer's October 29, 2003, opinion fails to

15 account for evidence showing plaintiff continued to be treated for pain in both hands, and is

16 undermined as well by the additional evidence presented to the Appeals Council.  Indeed, on

17 November 3, 2003, Dr. Katzenmeyer noted plaintiff's complaints of increased pain and

18 discomfort in both hands.  (Tr. at 346.)  On November 7, 2003, plaintiff reported to Dr.

19 Katzenmeyer that her return to full duty had exacerbated her neck, back and hand pain, and he

20 designated her status as "permanent and stationary."  (Tr. at 344-45.)  On December 5, 2003, Dr.

21 Katzenmeyer noted that testing indicated that plaintiff had de Quervain's in both wrists, although

22 it was worse on the right.  (Tr. at 335.)  Upon review, the record shows a worsening of plaintiff's

23 symptoms, and the newly submitted evidence shows the failure of continued treatment to

24 alleviate plaintiff's right carpal tunnel syndrome, as well as progressively more aggressive

25 treatment for that condition in plaintiff's left hand.

26 \\\\\\

1    Accordingly, although the ALJ articulated sufficiently specific and legitimate

2  reasons for rejecting the opinion of Dr. Werblin, remand is required for further consideration of

3  Dr. Peterson's opinion in light of the material evidence submitted to the Appeals Council.  On

4  remand, the ALJ may determine that the new evidence warrants obtaining additional medical

5  evidence or testimony, including a more recent opinion from Dr. Peterson and/or Dr.

6  Katzenmeyer.

7    C.  Consideration of Plaintiff's Subjective Symptoms

8    The ALJ determines whether a disability applicant is credible, and the court defers

9  to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

10  94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

11  credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

12  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

13  supported by "a specific, cogent reason for the disbelief").

14    In evaluating whether subjective complaints are credible, the ALJ should first

15  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

16  F.2d 341, 344 (9th Cir. 1991) (en banc).  The ALJ may not find subjective complaints incredible

17  solely because objective medical evidence does not quantify them.  Id. at 345-46.  If the record

18  contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

19  then considers the nature of the alleged symptoms, including aggravating factors, medication,

20  treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

21  applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

22  inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

23  and (3) daily activities.[6]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

24  _____

25    [6]  Daily activities which consume a substantial part of an applicants day are relevant.
"This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
26  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
any way detract from her credibility as to her overall disability.  One does not need to be utterly

1  SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

2  and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

3  between testimony and conduct, may also be relevant.  Light v. Social Security Administration,

4  119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

5  see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

6  medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

7  affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

8  must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,

9  599 (9th Cir. 1999).

10          Here, the ALJ recounted plaintiff's testimony regarding her symptoms and alleged

11  limitations.  Plaintiff testified that she can use the computer for only five minutes due to pain and

12  numbness, that she can walk for only two to five minutes, can write for only two minutes, and

13  has trouble vacuuming and reaching overhead with her right arm.  (Tr. at 604, 607-08, 611, 618.)

14  Plaintiff also testified that she "limits herself" to cooking on the weekends and that she avoids

15  overhead reaching.  (Tr. at 607, 612.)  Plaintiff reported that she can drive to her doctor's office,

16  which is a  twenty-two mile round trip, that she can carry grocery bags with her left hand if they

17  are light, that she regularly folds the laundry, and that she puts dishes in the dishwasher.  (Tr. at

18  85, 624.)

19          The ALJ credited plaintiff's allegations of subjective symptoms to the extent they

20  were consistent with his findings regarding her residual functional capacity.  (Tr. at 20-22.)

21  Specifically, he found that plaintiff was "credible with respect to her condition and resulting

22  limitations but not to the preclusion of all work-related activity."  (Tr. at 21.)   For example, the

23  ALJ did not credit plaintiff's testimony that she has difficulty standing or walking for more than

24  two to five minutes.  (Tr. at 20, 618.)  The ALJ found this testimony to be inconsistent with the

25  _____

26  incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
   (quotation and citation omitted).

12

1    assessment of treating physician, Dr. Werblin, who opined that plaintiff could walk and stand for

2    a total of four hours in an eight-hour workday, and for forty minutes without interruption.  (Tr. at

3    20, 433.)  The ALJ also noted that in spite of plaintiff's extensive treatment for her conditions,

4    "even Dr. Katzenmeyer suggested she [could] find suitable work and recommended vocational

5    training."  (Tr. at 21.)  The ALJ further commented that Dr. Peterson did not preclude plaintiff

6    from work and stated she could remain on modified duty indefinitely.  (Tr. at 21, 474.)

7            Although the ALJ provided sufficient reasons to support his credibility

8    determination, the court notes that Dr. Peterson's June 2005 opinion regarding plaintiff's

9    restrictions predates his subsequent, multiple treatments of plaintiff's left and right hands.

10   Although the new evidence is not dispositive on the ultimate issue of disability, it does suggest

11   additional limitations on plaintiff's ability to perform her past relevant work as a customer

12   relations complaint clerk.  Because the ALJ did not have that evidence before him at the time of

13   the hearing or when he rendered his decision, remand is appropriate for further development of

14   the record, including a supplemental hearing to allow plaintiff to testify regarding her post-

15   operative limitations and symptoms, as well as any other relevant evidence.

16          D.  Lay Witness Testimony

17          Plaintiff next argues that the ALJ improperly rejected the testimony of her

18   daughter, Lepira Brown, claiming he was "openly hostile" to this witness.  See Plaintiff's Brief,

19   at 9:20-28.  In support of this allegation, plaintiff cites the ALJ's comment in the decision, that

20   Ms. Brown "was called by the attorney, apparently to create additional opportunity for error."

21   (Tr. at 20.)  Regardless of whether that statement by the ALJ does, or does not, demonstrate

22   "hostility" to Ms. Brown's testimony, the record shows that the ALJ considered that testimony in

23   accordance with the law.

24          An ALJ is required to "consider observations by non-medical sources as to how

25   an impairment affects a claimant's ability to work."  Sprague v. Bowen, 812 F.2d 1226, 1232

26   (9th Cir. 1987).  "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ

1   must take into account, unless he or she expressly determines to disregard such testimony and

2   gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

3   2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Similar to the ALJ's role

4   in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he

5   ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

6   resolving ambiguities."  Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting

7   Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

8           Here, the ALJ considered the testimony of  Ms. Brown, noting that it reflected

9   limitations similar to those expressed by plaintiff herself.  (Tr. at 20.)  Ms. Brown testified that

10  her mother has difficulty rotating her neck, and that when they go to the mall, her mother has to

11  stop and rest, because she cannot sit or stand for long periods.  (Tr. at 20, 628-34.)  The ALJ

12  noted that Ms. Brown does not live with her mother and sees her only about once a week.  He

13  also observed that some of her testimony reflected comments made by plaintiff, and were

14  therefore not based on her own individual observations.  For example, Ms. Brown testified that

15  plaintiff complained of pain, and had difficulty sleeping at night.  (Tr. at 630, 634.)  Despite

16  these cogent reasons for discounting Ms. Brown's testimony, the ALJ ultimately credited her

17  testimony insofar as it was consistent with the limitations the ALJ found to be supported by the

18  evidence.  Accordingly, the ALJ committed no error in his evaluation of Ms. Brown's testimony.

19          E.  Medication Side Effects

20          Next, plaintiff points to two exhibits listing plaintiff's prescription medications

21  and argues that the ALJ erred by failing to discuss the limitations imposed by those medications'

22  side effects.  See Plaintiff's Brief, at 11:24-12:1.  Plaintiff does not allege any specific side

23  effects caused by these medications, nor does she explain their effect on her ability to work.

24          In any event, the record shows that the ALJ specifically discussed plaintiff's

25  medications and their alleged side effects, i.e., drowsiness.  (Tr. at 19, 20, 21.)  The ALJ did not

26  include any limitations related to these side effects in his assessment of plaintiff's RFC.  The

1  record supports this implicit finding, as Dr. Katzenmeyer's notes consistently include comments

2  that plaintiff tolerated her medication well.  (See, e.g., Tr. at 339, 353, 355, 357, 358.)  Dr.

3  Katzenmeyer's treatment notes also reveal repeated instructions on the proper use of certain

4  medications, advising against using them during work hours, when driving, and only as needed.

5  (See, e.g., Tr. at 381-87, 519.)  Furthermore, during plaintiff's unsuccessful return to work in

6  September and October 2003, there was no indication in the record that plaintiff suffered adverse

7  side effects from her medication.  (Tr. at 353, 355, 357.)  Rather, the record shows it was

8  plaintiff's repeated use of her head, neck and arms that caused her to quit working again.  (Tr. at

9  344-45, 346, 348.)  Accordingly, the court finds no error in the ALJ's consideration of the side

10  effects of plaintiff's medications.

11          E.  Hypothetical to the Vocational Expert

12          Finally, plaintiff argues that the hypothetical posed by the ALJ failed to include

13  plaintiff's non-exertional impairment of chronic pain.

14          Hypothetical questions posed to a vocational expert must set out all the

15  substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.

16  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

17  limitations, the expert's testimony as to jobs in the national economy which the claimant can

18  perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

19  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate

20  interpretations of the evidence, the hypothetical which ultimately serves as the basis for the

21  ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey

22  v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988);[7] but see Matthews v. Shalala, 10 F.3d 678 (9th Cir.

23  1993) (the failure to include all of a claimant's limitations in a hypothetical may be harmless

24
_____

25          [7]  Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a
    hypothetical question propounded by a claimant's counsel."  Magallanes, 881 F.2d at 756.
26  Rather the ALJ is free to accept or reject these restrictions as long as they are supported by
    substantial evidence.  Id., at 756-57.

1    error if the ALJ's conclusions are supported by other reliable evidence).

2              Here, the ALJ did not find that plaintiff suffered from chronic pain, nor did

3    plaintiff allege this as a specific impairment.  Rather, plaintiff indicated that she was able to

4    modify many of her daily activities to avoid pain, and that her medication reduced pain.  (Tr. at

5    85, 607, 612, 620, 624.)  Further, the ALJ's RFC assessment accounts for plaintiff's limitations

6    caused by pain and is based on objective evidence in the record, as well as plaintiff's partially

7    credited testimony.  Specifically, the ALJ concluded that plaintiff had the residual functional

8    capacity for modified light work with the following limitations:  no walking or standing greater

9    than four hours per day; no tight grasping and no overhead work with the right dominant hand;

10   no repetitive movement of the head or neck; and no keyboarding for more than two hours per

11   day, or for more than ten minutes continuously.  (Tr. at 22.)

12             The court finds no error in the hypothetical posed by the ALJ based on the

13   information available to him at the time.  However, as discussed above, the case must be

14   remanded for consideration of the additional materials submitted to the Appeals Council.  On

15   remand, the ALJ should consider the additional evidence regarding worsening in plaintiff's left

16   hand, as well as failed treatments for carpal tunnel and de Quervain's syndromes in plaintiff's

17   right hand.  To the extent the ALJ makes new findings regarding plaintiff's residual functional

18   capacity in light of the new evidence, the ALJ shall obtain additional vocational expert testimony

19   regarding plaintiff's ability to perform her past relevant work or other jobs in the national

20   economy.

21   <u>CONCLUSION</u>

22             Accordingly, for the reasons stated herein, the court grants plaintiff's motion for

23   summary judgment and remands this matter pursuant to sentence six of 42 U.S.C. 405(g), for

24   \\\\\

25   \\\\\

26   \\\\\

1    further analysis and possibly further development of the record.[8]  Defendants motion for

2    summary judgment is denied.

3                      SO ORDERED.

4    DATED: 9/24/07                              /s/ Gregory G. Hollows
                                                 U.S. Magistrate Judge
5

     Thomas.1759.ss.
6

7

8

9

10
     _____
11        [8] 42 U.S.C. § 405(g), governing judicial review in social security disability cases,
     authorizes two kinds of remand to the Commissioner.  See Melkonyan v. Sullivan, 501 U.S. 89,
12   111 S.Ct. 2157 (1991).  First, sentence four, ( a "sentence four remand") permits remand incident
     to affirmance, modification, or reversal of an agency decision.  Sentence four reads:
13
               The court shall have power to enter, upon the pleadings and
14             transcript of the record, a judgment affirming, modifying, or
               reversing the decision of the Secretary, with or without remanding
15             the cause for a rehearing.

16        Remand on substantive grounds error is pursuant to sentence four.  Second, sentence six,
     (a "sentence six remand"), permits remand to allow the agency to take some further action, or to
17   consider new evidence not presented previously.  Sentence six reads:

18             The court may, on motion of the Secretary made for good cause
               shown before he files his answer, remand the case to the Secretary
19             for further action by the Secretary, and it may at any time order
               additional evidence to be taken before the Secretary, but only upon
20             a showing that there is new evidence which is material and that
               there is good cause for the failure to incorporate such evidence into
21             the record in a prior proceeding; and the Secretary shall, after the
               case is remanded, and after hearing such additional evidence if so
22             ordered, modify or affirm his findings of fact or his decision, or
               both, and shall file with the court any such additional and modified
23             findings of fact and decision, and a transcript of the additional
               record and testimony upon which his action in modifying or
24             affirming was based.

25   Under sentence six, the court retains jurisdiction until the Commissioner files the post-remand
     results.  See Shalala v. Schaefer, 509 U.S. 292, 298-99, 113 S.Ct. 2625, 2629-30 (1993).
26